**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MYKELL WEAVER,<br><br>*Plaintiff*,<br><br>v.<br><br>LT. DEAN DOERFLIEN, *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-86<br><br>Judge Jeffery P. Hopkins |

## OPINION AND ORDER

Plaintiff Mykell Weaver ("Plaintiff" or "Weaver") initiated this civil rights action following an interaction with officers from the Colerain Township Police Department. Weaver alleges that officers assaulted him using excessive force after they allegedly initiated a traffic stop. Weaver brings this case against the following defendants: Lieutenant Dean Doerflein, Sergeant Bill Hane, Police Officer Andrew Morris (collectively, the "Individual Defendants"), and Colerain Township (the "Township") (collectively, "Defendants"). This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 28). Weaver has filed a Response in Opposition (Doc. 30) and Defendants have filed a Reply (Doc. 31). The motion is ripe for decision. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 28).

## I. BACKGROUND

In the early morning of February 26, 2023, Weaver was driving his 2007 gray Volvo on Colerain Avenue when the vehicle accelerated "a little bit" and then shut off. Weaver

Dep., Doc. 25-1, 67:17–68:6. Weaver pulled into the parking lot of a closed Shell gas station at the intersection of Colerain Avenue and Banning Road. *Id.* at 67:9–12, 68:3–24.

At approximately 12:45 a.m., Lt. Doerflein and Sgt. Hane, with the Colerain Township Police Department, were parked in a marked Colerain Township police cruiser near 6960 Colerain Avenue, monitoring traffic. Doerflein Aff., Doc. 26-1, ¶¶ 3–4; Hane Aff., Doc. 27-1, ¶¶ 3–4. The officers assert that their speed-detection equipment recorded Weaver's Volvo traveling 63 miles per hour in a 35-mile-per-hour zone, and that they immediately left their location, activated a traffic stop, and followed Weaver for about twenty seconds before he entered the Shell station. Doerflein Aff., Doc. 26-1, ¶¶ 5–6; Hane Aff., Doc. 27-1, ¶¶ 5–6; Doerflein BWC, Doc. 16, 0:00:03–0:00:23. Weaver disputes that he was speeding and maintains that the officers did not activate their emergency lights until after he had exited the Volvo in the Shell station parking lot. Weaver Dep., Doc. 25-1, 68:7–16, 70:2–71:10; 74:1–76:3; Doc. 30-1, PageID 594, ¶¶ 1–2.

After parking at the Shell station, Weaver opened the Volvo's hood and immediately exited the vehicle. Weaver Dep., Doc. 25-1, 68:25–70:1; Doerflein Aff., Doc. 26-1, ¶¶ 6–7; Hane Aff., Doc. 27-1, ¶¶ 6–7; Doerflein BWC, Doc. 16, 0:00:03–0:00:25. The officers observed Weaver exit the Volvo and, perceiving the conduct as potentially indicative of flight, drew their firearms and pointed them toward him. Doerflein Aff., Doc. 26-1, ¶¶ 3–14; Hane Aff., Doc. 27-1, ¶¶ 3–13; Doerflein BWC, Doc. 16, 0:00:25–0:00:45; Hane BWC, Doc. 17, 0:00:09–0:01:28. Weaver testified that he saw the police cruiser only after exiting the vehicle. Weaver Dep., Doc. 25-1, 74:1–76:3. He raised his hands and returned to the driver's seat. Doerflein BWC, Doc. 16, 0:00:26–0:00:48. However, Weaver asserts that the officers ordered him back into the vehicle. Doc. 30-1, PageID 591, ¶ 12; Doc. 30-1, PageID 594, ¶ 3.

While Weaver sat in the driver's seat with the door open, he placed both hands outside the vehicle in the officers' view. Doc. 28-1, ¶ 13; Doc. 30-1, ¶ 13; Doerflein BWC, Doc. 16, 0:00:26–0:00:48. Lt. Doerflein continued to provide cover with his firearm while Sgt. Hane approached Weaver. Doc. 28-1, ¶ 14; Doc. 30-1, ¶ 14. Sgt. Hane drew his taser, grasped Weaver's left hand, asked why he was "jumping out of the car," and he and Lt. Doerflein ordered him out of the Volvo. Doc. 28-1, ¶¶ 15–16; Doc. 30-1, ¶¶ 15–16. Weaver initially remained in the vehicle but thereafter got out; Sgt. Hane re-holstered his taser, and Lt. Doerflein re-holstered his firearm. Doc. 28-1, ¶ 18; Doc. 30-1, ¶ 18. Weaver disputes that he failed to comply with the officers' commands to exit the vehicle. Doc. 30-1, ¶¶ 17–18, 27–28, 32; Weaver Dep., Doc. 25-1, 89:1–4.

Sgt. Hane leaned Weaver against the Volvo and handcuffed his hands behind his back. Hane BWC, Doc. 17, 0:00:48–0:01:24; Doerflein BWC, Doc. 16, 0:01:00–0:01:20. During the handcuffing, Sgt. Hane informed Weaver that he was being pulled over and detained, and the officers questioned Weaver about his decision to exit the Volvo. Hane BWC, Doc. 17, 0:00:55–0:01:27; Doerflein BWC, Doc. 16, 0:01:05–0:01:40. Weaver explained that the Volvo was malfunctioning and that he had needed to get out. Hane BWC, Doc. 17, 0:00:55–0:01:27; Doerflein BWC, Doc. 16, 0:01:05–0:01:40. Weaver told the officers that he was speaking with his fiancée and did not have weapons on his person. Hane BWC, Doc. 17, 0:01:27–0:01:40; Doerflein BWC, Doc. 16, 0:01:41–0:01:53. Weaver then asked Sgt. Hane to retrieve Weaver's telephone from the ground outside the Volvo; Sgt. Hane responded that Weaver should "hang tight," completed the handcuffing, and patted Weaver down. Hane BWC, Doc. 17, 0:01:40–0:02:00; Doerflein BWC, Doc. 16, 0:01:53–0:02:03.

Following a brief conversation and an attempt to escort Weaver to the cruiser still handcuffed, Weaver was taken down to the pavement next to the Volvo. The parties dispute the circumstances preceding and during Weaver's takedown. Defendants contend that, as Sgt. Hane attempted to escort Weaver toward the police cruiser, Weaver tensed his body, planted his foot, and told Sgt. Hane to "hold on" and "please stop." Doc. 28-1, ¶ 28; Hane BWC, Doc. 17, 0:02:13–0:02:21; Doerflein BWC, Doc. 16, 0:02:13–0:02:28. Sgt. Hane then pressed Weaver against the Volvo and told him twice that he was "going to lose this," while Weaver stated that he understood and continued to say, "please stop." Doc. 28-1, ¶ 29; Hane BWC, Doc. 17, 0:02:13–0:02:21; Doerflein BWC, Doc. 16, 0:02:25–0:02:35.

Thereafter, Sgt. Hane again attempted to escort the handcuffed Weaver to the cruiser and, according to Defendants, Weaver responded by bending over and pulling away from Sgt. Hane. Doc. 28-1, ¶ 32; Hane BWC, Doc. 17, 0:02:19–0:02:23; Doerflein BWC, Doc. 16, 0:02:30–0:02:39. Defendants contend that Sgt. Hane used Weaver's momentum to spin him into the side of the open Volvo door, causing the door to slam shut, and then took Weaver to the ground, with Weaver's buttocks making the first contact with the ground. Doc. 28-1, ¶ 33; Doerflein BWC, Doc. 16, 0:02:30–0:02:39. The body-camera recordings reflect that the takedown—from Sgt. Hane's movement of Weaver toward the vehicle until Weaver reached the ground—occurred over approximately five seconds. Hane BWC, Doc. 17, 0:02:23–0:02:28; *see also* Doerflein BWC, Doc. 16, 0:02:30–0:02:39. After reaching the ground, Weaver stated: "Okay, look, I'm down, I'm down on the ground. I'm down on the ground." Hane BWC, Doc. 17, 0:02:28–0:02:31; Doerflein BWC, Doc. 16, 0:02:41–0:02:44.

Weaver disputes Defendants' characterization of the encounter. He testified that he complied with all commands and he asserts that Sgt. Hane forcefully slammed him to the

ground. Weaver Dep., Doc. 25-1, 81:24–86:12; Doc. 30-1, ¶¶ 32–37, 43; Doc. 30-1, PageID 594–595, ¶¶ 4–6. Weaver further contends that Sgt. Hane retained complete physical control over him during the encounter and that he nevertheless attempted to comply with the officers' commands. Doc. 30-1, ¶¶ 35–37, 39, 43; Doc. 30-1, PageID 594–595, ¶¶ 5–6. The Court has reviewed the cited body-camera footage in considering the parties' accounts. Hane BWC, Doc. 17, 0:01:50–0:03:39; Doerflein BWC, Doc. 16, 0:02:23–0:03:11.

At some point during the takedown, additional Colerain Township officers arrived to assist. Doerflein BWC, Doc. 16, 0:02:43–0:03:08. Lt. Doerflein briefly held Weaver's ankles and the bottom of his shoes while Weaver was on the ground and moving into a prone position. Doerflein Aff., Doc. 26-1, ¶ 25; Doerflein BWC, Doc. 16, 0:02:25–0:03:07. Sgt. Hane then helped Weaver to his feet and escorted him to the police cruiser. Doerflein BWC, Doc. 16, 0:03:28–0:04:05; Hane BWC, Doc. 17, 0:03:10–0:04:09. As Weaver was being escorted in handcuffs from the Volvo, Lt. Doerflein found a loaded 9mm Glock handgun beneath the driver's seat. Doerflein Aff., Doc. 26-1, ¶¶ 30–31; Doerflein BWC, Doc. 16, 0:03:10–0:03:25. Lt. Doerflein avers that he searched the Volvo because he believed Weaver had attempted to move back toward the vehicle during the struggle. Doerflein Aff., Doc. 26-1, ¶¶ 30–31. Weaver disputes the lawfulness of the vehicle search, but he did not allege any facts related to the search in his Complaint, nor plead a Fourth Amendment claim on that basis. Doc. 30-1, ¶ 42; Compl., Doc. 1, ¶¶ 26–29.

Weaver testified that he was not punched, kicked, or tased during the incident. Weaver Dep., Doc. 25-1, 94:16–95:2. He maintains, however, that he was pushed into the ground and choked—though during his deposition, he could not actually recall whether Sgt. Hane choked him. *Id.* 94:2–6. Weaver's Complaint and responses, on the other hand, assert that Sgt. Hane

had choked him. Compl., Doc. 1, ¶¶ 18–19; Doc. 30-1, ¶ 43; Doc. 30-1, PageID 594–595, ¶¶ 5–6. Weaver testified he sustained injuries to his head and shoulders and aggravated an injury to his hand. Weaver Dep., Doc. 25-1, 78:20–79:14, 86:18–22.

Finally, Officer Andrew Morris was not on duty and was not present during the stop, detention, search, arrest, or use of force at issue. Morris Aff., Doc. 19-1, ¶¶ 3–5; Doerflein Aff., Doc. 26-1, ¶ 33; Hane Aff., Doc. 27-1, ¶ 30. Weaver expressly admits that. Doc. 30-1, ¶ 44. Weaver also testified that he could not recall any officers' faces from the incident and did not examine their name tags. Weaver Dep., Doc. 25-1, 102:1–19.

Based on these events, Weaver sets forth three causes of action in his Complaint. First, he asserts an excessive force claim under 42 U.S.C. § 1983 against the Individual Defendants, in their individual and official capacities, and against the Township. Compl., Doc. 1, ¶¶ 26–29. In that cause of action, Weaver also seeks to hold the Township liable under *Monell*. *Id.* Second, Weaver asserts a state law claim for assault and battery against the Individual Defendants. *Id.* ¶¶ 30–31. Third and finally, Weaver asserts a state law claim for intentional infliction of emotional distress ("IIED"). *Id.* ¶¶ 32–37. Defendants seek summary judgment on all of Weaver's claims.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

## III. LAW AND ANALYSIS

### A. Official Capacity Claims

As stated, Weaver asserts a § 1983 excessive-force claim against Lt. Doerflein, Sgt. Hane, and Officer Morris in both their individual and official capacities. Compl., Doc. 1, ¶¶ 4–6, 26–29. Weaver also assert a § 1983 claim against Colerain Township. *Id.* ¶¶ 7, 26–29.

An official-capacity claim against a government officer is, in substance, a claim against the governmental entity the officer represents. *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Accordingly, because Colerain

Township is already a defendant, Weaver's official-capacity claims against Lt. Doerflein, Sgt. Hane, and Officer Morris are duplicative and superfluous. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013). Accordingly, Weaver's § 1983 claim against the Individual Defendants in their official capacities is therefore dismissed with prejudice.

**B. Claims Against Officer Morris**

Weaver has asserted three claims against Officer Morris: a § 1983 excessive force use claim, a state law assault and battery claim, and a state law IIED claim. Officer Morris seeks summary judgment on all three claims on the basis that he was not present for, and had no contact with Weaver on the date in question. Doc. 28, PageID 524–25. Weaver's memorandum in opposition was silent as to this assertion and he admitted in response to Defendants' Proposed Undisputed Facts that Officer Morris was not on the scene in the early morning hours of February 26, 2023, and that he was not even on duty for the Colerain Township Police Department at that time. *See* Doc. 30; Doc. 28-1, ¶ 44; Doc. 30-1, ¶ 44.

"Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury." *Pineda v. Hamilton County*, 977 F.3d 483, 491 (6th Cir. 2020). When faced with a summary judgment motion, a plaintiff like Weaver, "must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Twp. of Riverdale,* 904 F.3d 280, 291 (6th Cir. 2018). Weaver has not produced any evidence that would create a genuine dispute of material fact on this point. During his deposition, Weaver conceded that he cannot say positively that Officer Morris—or even the other named officers—were present: "I can't recall any faces from that night," and he did not look for name tags. Weaver Dep., Doc. 25-1, 102:1–19. The record in the case establishes that Morris was

not on duty, was not at the scene, and did not participate in the arrest. Morris Aff., Doc. 19-1, ¶¶ 3–5; Doerflein Aff., Doc. 26-1, ¶ 33; Hane Aff., Doc. 27-1, ¶ 30; Doc. 28-1, ¶ 44; Doc. 30-1, ¶ 44. Thus, Weaver has not shown the presence of a genuine dispute. Without evidence tying Officer Morris to the alleged use of force, let alone to the scene, no reasonable jury could find that he was personally involved. *Pineda*, 977 F.3d at 490–92; *Jutrowski*, 904 F. 3d at 289–92. Officer Morris is therefore entitled to summary judgment on Plaintiff's § 1983 claims.

The same is true for Weaver's state law claims. Under Ohio law, a civil battery claim requires proof that the defendant intentionally caused an unconsented-to touching that was harmful or offensive. *Anderson v. St. Francis St. George Hosp.*, 77 Ohio St.3d 82, 84 (1996). And to prevail on an IIED claim, Weaver must establish that the defendant engaged in "extreme and outrageous" conduct and that the conduct proximately caused Weaver's serious emotional distress. *Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 410 (1994). Because Weaver offers no evidence from which a reasonable jury could find that Officer Morris was present, Officer Morris is entitled to summary judgment on the state-law claims as well.

### C. Claims Against Lt. Doerflein and Sgt. Hane

#### 1. Excessive force claim

To prevail under § 1983, Weaver must establish that Lt. Doerflein and Sgt. Hane deprived him "of a right secured by the Constitution or laws of the United States" that was "caused by a person acting under color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007) (citation omitted). Here, there is no dispute that Lt. Doerflein and Sgt. Hane were acting under the color of state law. Doc. 28, PageID 523. Thus, the focus of the Court's inquiry hones in on whether a deprivation occurred.

But qualified immunity may shield Lt. Doerflein and Sgt. Hane from suit if they made "'a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [they] confronted.'" *Marvin*, 509 F.3d at 243 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). To decide whether Lt. Doerflein and Sgt. Hane are entitled to qualified immunity, the Court must first consider whether their conduct violated a constitutional right—here, the right to be free from excessive force. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). But if no constitutional violation occurred, Weaver's § 1983 claim fails as a matter of law and Lt. Doerflein and Sgt. Hane are entitled to summary judgment and do not need qualified immunity. *Marvin*, 509 F.3d at 244 (citing *Saucier*, 533 U.S. at 201).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). When reviewing Fourth Amendment excessive force claims, the Sixth Circuit has adopted an objective-reasonableness standard. *Id.* at 388. This is a fact-specific inquiry, depending on the totality of the circumstances. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). To determine whether an officer acted reasonably, courts consider this non-exhaustive list of factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)) (other citation omitted).

Here, the record shows that Lt. Doerflein acted reasonably and applied very limited force when arresting Weaver. Weaver contends that Sgt. Hane choked him and forcefully took him to the ground. Compl., Doc. 1, ¶¶ 18–19, 24; Doc. 30-1, ¶¶ 35–37, 43; Doc. 30-1,

PageID 594–595, ¶¶ 5–6. However, the footage from the body-camera recordings show that Lt. Doerflein was retrieving Weaver's cellular telephone near the open Volvo door while Sgt. Hane attempted to escort Weaver to the police cruiser and then took Weaver to the ground. Doerflein BWC, Doc. 16, 0:02:25–0:02:44. At most, Lt. Doerflein briefly placed his hands on Weaver as Weaver was taken down. *Id.* Lt. Doerflein then moved to secure Weaver's ankles and briefly applied force to his ankles and the bottoms of his shoes. Doerflein Aff., Doc. 26-1, ¶ 25; Doerflein BWC, Doc. 16, 0:02:44–0:03:07. Based on the video evidence, no reasonable jury could find that Lt. Doerflein's actions amounted to an excessive use of force. Weaver has not introduced any evidence that would call the force used by Lt. Doerflein into question. Thus, Lt. Doerflein is entitled to summary judgment on Weaver's § 1983 claim.

Sgt. Hane's use of force presents a closer question. Defendants maintain that Weaver resisted by tensing his body, planting his foot, bending over, and pulling away as Sgt. Hane escorted him to the cruiser. Doc. 28-1, ¶¶ 28–33. Weaver offers a materially different account. He testified that he complied with the officers' commands and that Sgt. Hane, while maintaining physical control of him, forcefully drove him to the ground. Weaver Dep., Doc. 25-1, 81:24–86:12; Doc. 30-1, ¶¶ 32–37, 43; Doc. 30-1, PageID 594–595, ¶¶ 4–6. This begs the question of whether Weaver was engaged in behavior that amounts to active resistance when that occurred because, a suspect "has a clearly established constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him." *Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019) (citation omitted). "Drawing the line at a suspect's active resistance defines the right at a level of particularity appropriate for a claim pursued under § 1983." *Id.* (citing *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)).

Though Weaver asserts in his Complaint that Sgt. Hane choked him during the takedown, *see* Compl., Doc. 1, ¶¶ 18–19, Weaver has not produced evidence that creates a genuine dispute of material fact on this point. Weaver points to Sgt. Hane's body-camera footage as support for his contention that Sgt. Hane choked him. Doc. 30-1, ¶ 33. But the footage fails to show that that occurred and it would be nothing more than speculation to say that the body-camera footage is proof that Sgt. Hane choked Weaver. Weaver's own deposition further belies his claims of being choked. Weaver testified: "Honestly, I don't recall if I was choked or not . . . I'm sure if they would have choked me, I'm sure it would have happened after I was slammed." Weaver Dep., Doc. 25-1, 82:1–8. Put simply, Weaver had not produced any evidence that would create a genuine dispute of material fact as to whether Sgt. Hane used excessive force by choking Weaver during the encounter.

But what about the takedown maneuver? There is no question that Sgt. Hane used physical force when he employed the takedown maneuver on Weaver. Hane BWC, Doc. 17, 0:02:13–0:02:31; Doerflein BWC, Doc. 16, 0:02:13–0:02:44. At the time that occurred, Sgt. Hane was investigating Weaver for speeding 63 mph in a 35 mph zone and not having a visible license plate. Hane Aff., Doc. 27-1, ¶¶ 4–5. This is a minor offense. However, Sgt. Hane stated that he initially thought that Weaver planned to flee because he exited the Volvo after he initiated the traffic stop in the Shell parking lot. *Id.* ¶ 7. Lt. Doerflein stated the same. Doerflein Aff., Doc. 26-1, ¶ 7. This prompted both officers to draw their firearms. *Id.* ¶ 8.

The body-camera footage shows that a short time later, Sgt. Hane informed Weaver that he was going to place Weaver in a police cruiser. Hane BWC, Doc. 17, 0:02:00–0:02:15. However, Weaver told Sgt. Hane to "hold on" and that he did not have the right to do that. *Id.*; Doerflein BWC, Doc. 16, 0:02:20–0:02:26. Sgt. Hane tried to move Weaver toward the

cruiser, Doerflein BWC, Doc. 16, 0:02:26–0:02:30, but Weaver stated repeatedly "please stop" while Sgt. Hane told Weaver that he was "not listening." Hane BWC, Doc. 17, 0:02:14–0:02:28. This resulted in Sgt. Hane proceeding with the takedown maneuver. *Id.* Once on the ground, Weaver said, "I'm down on the ground, I'm down on the ground." Doerflein BWC, Doc. 16, 0:02:36–0:02:43.

A reasonable jury viewing this evidence could conclude that Weaver's conduct demonstrated mere noncompliance. This matters because "mere noncompliance is not active resistance." *Woodstock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323–24 (6th Cir. 2015) and *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013)). Moreover, Sgt. Hane does not allege that Weaver assaulted him or that he feared Weaver was an immediate threat to his safety or the safety of the other officers. *Laplante v. City of Battle Creek*, 30 F.4th 572, 580 (6th Cir. 2022). Lt. Doerflein's actions during this encounter lend further credence to the inference that Weaver posed no threat to the officers, nor a risk of flight. Rather than continue his engagement with Weaver during Sgt. Hane's take-down of him, Lt. Doerflein stepped around the pair to retrieve Weaver's cell phone. Doerflein BWC, Doc. 16, 0:02:36–0:02:43. Further, though Defendants refer to the loaded 9mm Glock handgun that was recovered from Weaver's car, *see* Doc. 28, PageID 529, none of the officers on the scene were aware of the firearm until *after* force was used to subdue Weaver, which means the mere presence of the firearm at the scene does not deem Sgt. Hane's conduct before discovery of the firearm reasonable. Hane Aff., Doc. 27-1, ¶ 28. Under the totality of circumstances, and viewing the facts in the light most favorable to Weaver, it is possible that a reasonable jury could find that Sgt. Hane acted unreasonably when he used the takedown maneuver that caused Weaver

injury, resulting in a violation of Weaver's right to be free from excessive use of force. None of the cases cited by Defendants persuade this Court otherwise. *See* Doc. 28, PageID 529–32. Accordingly, Weaver has demonstrated a genuine issue of material fact on this claim.

Since a reasonable jury could find that Sgt. Hane's conduct amounts to a violation of Weaver's constitutional rights under the Fourth Amendment, the Court turns to the second step of the two-step qualified immunity inquiry—*i.e.*, whether the right at issue was "clearly established" at the time of Sgt. Hane's conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Sixth Circuit "precedent clearly establishes that an officer may not use injurious physical force to subdue a suspect that is not actively resisting arrest." *Meadows v. City of Walker*, 46 F.4th 416, 424 (6th Cir. 2022). The case at bar is distinguishable from the one relied on by Defendants, *King v. City of Rockford*, 97 F.4th 379, 397 (6th Cir. 2024). Here, viewed in a light most favorable to Weaver, the body-camera footage of the arrest fails to clearly show that Weaver engaged in the same type of physical resistance exerted by the plaintiff in *King.* The body-camera footage observed in this case falls short of proving that Weaver's conduct came "close to the line distinguishing passive resistance from active." *Id.* On the record before this Court, it would not at all be a stretch for a jury to reasonably conclude that from the officers' perspective, Weaver could *not* be seen as possibly engaged in active resistance. As such, Sgt. Hane is not entitled to qualified immunity on Weaver's § 1983 excessive force claim.

**2. State law claims**

In his Complaint, Weaver has asserted two state law claims: (1) a claim for assault and battery, and (2) a claim for intentional infliction of emotional distress. The Court will first address his assault and battery claim. In the context of an assault and battery claim under Ohio law, an officer may use reasonable force to effect an arrest, but the privilege does not

extend to force "clearly beyond that which is reasonably necessary" under the circumstances. *Baker v. City of Hamilton*, 471 F.3d 601, 609–10 (6th Cir. 2006) (quoting *Schweder v. Baratko*, 103 Ohio App. 399, 403 (8th Dist. 1957)). If an officer uses more force than necessary, then he may be liable for assault and battery. *Id.* at 609 (citation omitted).

Weaver's "state law claim[] for assault and battery rise[s] and fall[s]" with his excessive force claim. *Griffin v. City of Heath, Ohio*, No. 2:04-cv-119, 2006 WL 745294, at *17 (S.D. Ohio Mar. 21, 2006) (citing *D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003)). As discussed above, Lt. Doerflein is entitled to summary judgment on Weaver's excessive use of force claim, thus he is also entitled to summary judgment on this state law claim. Sgt. Hane, however, is not entitled to summary judgment on this claim since there is a genuine dispute of material fact as to whether he violated Weaver's right to be free from excessive force. Sgt. Hane is also not entitled to statutory immunity on this claim because his "statutory immunity defense stands or falls with [his] federal qualified immunity defense." *Hopper v. Phil Plummer*, 887 F.3d 744, 760 (6th Cir. 2018). Where "resolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive force determination under § 1983," state-law immunity is inappropriate if qualified immunity is inappropriate. *Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013). The facts underlying Weaver's assault and battery claim are the same facts underlying his excessive force claim, thus, there exists a genuine dispute of material fact as to the assault and battery claim. Thus, Sgt. Hane is not entitled to statutory immunity on this state law claim.

As for the IIED claim, Weaver must prove that Lt. Doerflein and Sgt. Hane intentionally or recklessly engaged in extreme and outrageous conduct that proximately caused serious emotional distress. *Phung*, 71 Ohio St.3d at 410. Serious emotional distress is

severe and debilitating; ordinary fear, anger, humiliation, or transitory upset is insufficient. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). Even viewing all evidence in a light most favorable to him, Weaver has produced no evidence from which a jury could find serious emotional distress. Weaver testified he did not seek or receive psychological treatment or counseling. Weaver Dep., Doc. 25-1, 114:2–24. He identifies no diagnosis, medication, persistent symptoms, functional impairment, or other evidence of severe and debilitating emotional injury. Lt. Doerflein and Sgt. Hane are entitled to summary judgment on this claim.

**D. Claim Against Colerain Township**

The final claim to consider is Weaver's claim asserting governmental liability against Colerain Township under *Monell*. To establish a *Monell* claim, Weaver "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). He can do this by showing any of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id*.

Here, Weaver proceeds under two of those theories. First, that Colerain Township failed to adequately train and supervise its police officers with respect to traffic stops, specifically the safety and rights of motorists who engage in minor traffic infractions that do not support use of force. Compl., Doc. 1, ¶ 28. Second, that Colerain Township ratified the unconstitutional behavior of Lt. Doerflein, Sgt. Hane, and Officer Morris by failing to conduct a meaningful investigation into the use of excessive force against Weaver. *Id.* ¶ 29.

As to a failure-to-train theory, "[t]he inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To make the requisite showing, Weaver "must show prior instances of unconstitutional conduct demonstrating that the [Township] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Here, Weaver relies on the officers' affidavits that their conduct complied with their training. Doerflein Aff., Doc. 26; Hane Aff., Doc. 27. In doing so, Weaver identifies no evidence of the training's content, a deficient training or supervision practice, a history of abuse, prior similar incidents, or notice to Township policymakers. Thus, Weaver cannot prevail on a failure-to-train theory.

Turn then to his ratification theory. There are two ways for a plaintiff to show ratification: (1) when "a 'decisionmaker [who] possesses final authority to establish municipal policy with respect to the action' approves the unconstitutional conduct," and (2) when a decisionmaker fails to investigate after "multiple earlier inadequate investigations [that] concern comparable claims." *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 WL 1541805, at *3 (6th Cir. May 30, 2025) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)); *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (quoting *Pineda*, 977 F.3d at 495)). Though it is entirely unclear, Weaver appears to be proceeding under the second method. In regard to that method, "an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice." *Pineda*, 977 F.3d at 495 (citation omitted). Thus, to advance such a claim, a plaintiff must show "not only an inadequate investigation in this instance, but also a clear and

persistent pattern of violations in earlier instances." *Id*. (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)) (internal quotations omitted). Weaver has not done so. He has cited to no evidence beyond the affidavits of Sgt. Hane and Lt. Doerflein. He has offered no evidence of clear and persistent violations in earlier instances that would create a genuine dispute. Further, even if Weaver intended to proceed under the first method, Weaver has not identified an individual with final decision-making authority who ratified the decision not to investigate the Individual Defendants for the use of force incident involving Weaver. Accordingly, Colerain Township is entitled to summary judgment on the *Monell* claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART**. The Court grants summary judgment to Officer Morris and Lt. Doerflein on all claims asserted against them; to Sgt. Hane on Plaintiff's Ohio-law intentional-infliction-of-emotional-distress claim; and to Colerain Township on Plaintiff's § 1983 municipal-liability claim. Additionally, the Individual Defendants are entitled to summary judgment on Plaintiff's § 1983 official-capacity claims because they are duplicative of Weaver's claim against Colerain Township. The Court denies summary judgment on Plaintiff's § 1983 excessive-force claim and Ohio-law battery claim against Sgt. Hane, which remain for further proceedings.

**IT IS SO ORDERED.**

September 30, 2026

Jeffery P. Hopkins
United States District Judge